IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA B.,[1] ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> MARTIN J. O'MALLEY, ) <br> **Commissioner of Social Security,**[2] ) <br> ) <br>       **Defendant.** ) <br> ) | No. 23 C 166 <br><br> Magistrate Judge <br> Daniel P. McLaughlin |

### MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Samantha B.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [14] is denied, and the Commissioner's cross-motion for summary judgment [19] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On December 23, 2020, Plaintiff filed a claim for DIB, alleging disability since February 26, 2018. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held an initial telephone hearing on February 3, 2022 at which the ALJ granted Plaintiff a postponement to allow her time to obtain a representative. A subsequent telephonic hearing was held on May 5, 2022, and all participants attended the hearing by telephone. Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. A vocational expert ("VE") also testified.

On May 17, 2022, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of

February 26, 2018 through her date last insured of December 31, 2020. At step two, the ALJ concluded that Plaintiff had a severe impairment of multiple sclerosis (MS). The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"): can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; has no limitations in the total amount of time she is able to sit, stand, or walk throughout an 8-hour workday; needs to alternate her position such that she sits for up to five minutes after being on her feet standing and walking for one half-hour, and, while doing so, she would not need to be off task; can occasionally climb ramps and stairs, and can occasionally stoop, kneel, balance, crouch, and crawl, but can never climb ladders, ropes, or scaffolds; is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working at unprotected heights, and should avoid concentrated exposure to unguarded hazardous machinery; and is limited to simple, routine tasks. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a receptionist or administrative clerk. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could have performed jobs existing in significant numbers in the national economy, leading to a finding that she was not disabled under the Social Security Act.

# DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow

5

. . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's RFC finding was not supported by substantial evidence; and (2) the ALJ's symptom evaluation was not supported by substantial evidence. Each of Plaintiff's sub-arguments will be addressed below in turn.

#### A. The ALJ's Assessment of the State Agency Opinions

As a preface to the findings reached below, the Court notes that it generally agrees with Defendant that, in seeking remand, Plaintiff has offered "a slew of minimally developed arguments nitpicking the ALJ's decision." ([20] at 1.) That is not an availing approach, because "[r]ather than nitpick the ALJ's opinion for inconsistencies or contradictions," this Court must give the ALJ's decision "a

6

commonsensical reading." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (citation omitted). *See also Brenda L. v. Saul*, 392 F. Supp. 3d 858, 871 (N.D. Ill. 2019) ("The ALJ's decision may not be perfect, but it need not be.") (citations omitted). Furthermore, to reiterate, the Seventh Circuit recently made clear that ALJs are "subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053-54 (citations omitted). The Court views and addresses Plaintiff's arguments in accordance with this direction.

Plaintiff first argues that the ALJ erred in not fully adopting the opinions of the State agency medical consultants. ([14] at 5.) In his decision, the ALJ noted the medical consultants' opinions that Plaintiff could perform light level work and found the opinions "generally persuasive." (R. 31.) However, the ALJ did not adopt the consultants' sitting and standing restrictions. With respect to that decision, the ALJ explained as follows: "[G]iven the claimant's testimony that she has no issues with sitting or standing, combined with the lack of consistently documented abnormal gait, I find that the claimant has no limitation in her total ability to sit, stand or walk throughout an eight-hour workday." (*Id.*)

Plaintiff's argument appears to be predicated on the mistaken belief that – because the ALJ found the medical consultants' opinions "generally persuasive" – he was required to adopt all of the opined limitations. That is not the case. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."); *Reyes v.*

7

*Colvin*, No. 14 C 7359, 2015 WL 6164953, at *13 (N.D. Ill. Oct. 20, 2015) ("The rule in this circuit is that 'an ALJ may choose to adopt only parts of [a medical] opinion.'") (citations omitted). Further, the Court finds that the ALJ sufficiently explained how he assessed the medical consultants' opinions and why he did not adopt all of the restrictions. *See Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *8 (N.D. Ill. Nov. 7, 2018) ("The ALJ's omission of the consultants' one-to-two step task and 'brief and superficial' contact restrictions does not require remand. The ALJ was not obligated to adopt every restriction offered by the state agency consultants."); *Carrie B. v. Kijakazi*, No. 20-CV-5465, 2022 WL 1228194, at *3 (N.D. Ill. Apr. 26, 2022) ("The Court also rejects the Plaintiff's argument the ALJ erred in not including a limitation to 1-2 step tasks. The ALJ was not required to entirely adopt the findings of the state agency medical consultant."). Accordingly, Plaintiff's argument concerning the State agency opinion evidence is unavailing.

### B. Plaintiff's MS Flares

Plaintiff next argues that the ALJ did not sufficiently account for her MS flares and "did not fully consider what her functioning would be during a flare of MS." ([14] at 5-7.) In actuality, the ALJ considered Plaintiff's flares throughout his decision. In a dedicated passage, the ALJ addressed flares as follows:

> The record does not support the frequency, duration or intensity of flares as alleged by the claimant. The claimant testified to "constant" flares, but [the] record only shows a handful of flares throughout the relevant period. Similarly, the record does not support the intensity of flares as alleged by the claimant. For example, the claimant testified that during flares she is unable to move her legs, yet treatment records, including those from visits where the claimant reported an active flare, do not demonstrate any significant objective abnormality. To the contrary, the

8

> claimant demonstrated normal muscle tone, bulk and strength, normal gait, and normal coordination, without evidence of neurological deficits. I recognize that the claimant has waxing and waning symptoms, but her normal physical examinations during flares do not support the degree of limitation alleged. Moreover, when experiencing a flare, the claimant has not required significant treatment. As noted above, treatment was limited to IV steroids given three days in a row, lasting about 10 minutes per treatment session. There is no indication of the need for further treatment to address each flare, which suggest that the IV steroids were effective in addressing the claimant's subjective complaints. The record does not show medical evidence of flares lasting for weeks at a time, as alleged by the claimant. While I have considered the documented frequency, intensity and duration of the claimant's flares, the record as a whole does not support additional functional limitations beyond those adopted herein.

(R. 29-30 (citations omitted).)

Given this fulsome analysis, the Court finds that the ALJ sufficiently addressed Plaintiff's alleged MS flares and his consideration of same was based on substantial evidence. *See Dakita P. v. Kijakazi*, No. 20 CV 7126, 2023 WL 6392305, at *6 (N.D. Ill. Oct. 2, 2023) ("[T]he ALJ's conclusion that the record did not support Claimant's claim of 'constant flare ups' of such active lesions was not unreasonable."); *Haliey C. v. Kijakazi*, No. 21 C 3124, 2023 WL 4625774, at *5 (N.D. Ill. July 19, 2023) ("[T]he ALJ reasonably did not find Plaintiff's subjective symptoms, including her reported frequency and severity of her flareups, entirely consistent with the record."); *Cleveland v. Colvin*, No. 14 C 7579, 2016 WL 704832, at *15 (N.D. Ill. Feb. 23, 2016) ("The trouble for Plaintiff is that the ALJ reasonably discounted her testimony about the frequency, duration, and intensity of her ulcerative colitis flare-ups.").

9

### C. Off-Task and Absenteeism Issues

Plaintiff next argues that the ALJ did not sufficiently account for the possibility that her steroid treatments would cause her to be off-task and/or miss work. ([14] at 7-8.) The Court must reject this argument. Plaintiff has not met her burden showing excessive absenteeism or that her "appointments could not be arranged around a full-time . . . position schedule by scheduling them prior to work, after work, or on a non-work day or over a lunch hour to avoid missing work." *Chestine G. v. Saul*, No. 18 C 4980, 2020 WL 1157384, at *10 (N.D. Ill. Mar. 9, 2020); *Paul M. v. Saul*, No. 19 C 4581, 2021 WL 794981, at *6 (N.D. Ill. Mar. 2, 2021) ("Paul never establishes that he could only attend physical therapy during work hours, or that he would need to miss full days to attend such sessions").

### D. Concentration, Persistence, or Pace

Plaintiff next argues that the ALJ did not sufficiently account for her moderate limitations in concentration, persistent, or pace. ([14] at 8.) According to Plaintiff, the ALJ's RFC limitation to "simple, routine tasks" was inadequate. (*Id.*) However, an ALJ's use of catchall phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Furthermore, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to her asserted limitations with concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so

much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's argument concerning concentration, persistence, and pace must fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

### E.  Plaintiff's Alleged Need to Lie Down

Plaintiff next argues that the ALJ did not sufficiently account for her allegation that she needed to lie down and nap during the day. ([14] at 9-11.) On that topic, the ALJ noted Plaintiff's testimony that "she lies down for three hours per day." (R. 30.) However, the ALJ discounted Plaintiff's allegation, reasoning that there was "no medical indication of the need to lie down during the day." (*Id.*) The Court finds that this explicit rationale sufficiently addressed Plaintiff's asserted need to lie down. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021). The Court finds no error in the ALJ's determination that Plaintiff's alleged napping requirements were not borne out by the record.

### F.  Plaintiff's Fatigue

Plaintiff next argues that the ALJ did not sufficiently account for her fatigue. ([14] at 9.) In actuality, the ALJ considered Plaintiff's fatigue throughout his decision. In a dedicated passage, the ALJ addressed Plaintiff's fatigue as follows:

> [Plaintiff] complains of significant fatigue, but treatment records do not show such complaints during the relevant period. The claimant complained of fatigue in 2016 and 2017, but this is well before the February 2018 alleged onset date. Similarly, the claimant reports that she is taking Adderall to treat her fatigue, but it appears that this was prescribed after the date last insured. While the claimant reported some

11

> insomnia during flares, [the] record does not document consistent complaints of fatigue so as to warrant additional functional limitations beyond those adopted herein. Nevertheless, I considered the claimant's subjective complaints in allowing her to alternate her position such that she sits for up to five minutes after being on her feet standing, and walking for one half-hour, and in limiting the claimant to working in nonhazardous environments and avoid concentrated exposure to unguarded hazardous machinery. Further, I considered the claimant's reported fatigue in limiting her to simple, routine tasks.

(R. 30 (citations omitted).)

Given this fulsome analysis, the Court finds that the ALJ adequately considered and accommodated Plaintiff's issues with fatigue. *See Carol N. B. v. O'Malley*, No. 22 C 6921, 2024 WL 325328, at *8 (N.D. Ill. Jan. 29, 2024) ("Moreover, the ALJ accounted for any fatigue Carol experience by finding that she could not operate a motor vehicle as part of a job."); *Michele M. v. Kijakazi*, No. 20 CV 7749, 2023 WL 3479182, at *3 (N.D. Ill. May 16, 2023) ("This is not a case in which the ALJ failed to grapple with the evidence. Instead, she considered and weighed the evidence and assessed an RFC supported by substantial evidence. The court therefore finds that the ALJ sufficiently evaluated Michele's chronic fatigue, edema, and OCD and adequately accounted for them in the RFC analysis."); *Ellen W. v. Kijakazi*, No. 19 C 03866, 2022 WL 345076, at *6 (N.D. Ill. Feb. 4, 2022) ("[T]he ALJ provided sufficient reasons to discount Plaintiff's testimony with respect to her fatigue and need for extra breaks.").

### G. Medical Imaging

Plaintiff next argues that the ALJ erroneously overlooked the fact that she had documented brain lesions prior to the date last insured. ([14] at 11.) Plaintiff's contention in that regard fails as an initial matter because the ALJ did in fact

explicitly recognize that "[a] March 2020 MRI of the brain showed multiple white matter lesions consistent with demyelinating disease including at least three and up to five lesions showing at least partial enhancement consistent with active demyelination." (R. 28.) Furthermore, Plaintiff states in a conclusory fashion that the referenced imaging evidence concerning brain lesions "would have likely altered [the ALJ's] ultimate conclusion." ([14] at 11.) In raising this conclusory assertion and nothing more, Plaintiff has failed to show greater limitations were required due to the medical imaging in question. *See Jack A. v. Kijakazi*, No. 20 C 3446, 2021 WL 5882145, at *4 (N.D. Ill. Dec. 13, 2021) ("[T]he Court agrees with Defendant that even if the ALJ may have overlooked some of the finding of the shoulder MRI, Plaintiff has failed to show that any harm resulted because the ALJ did place some limitations with respect to Plaintiff's upper extremities (i.e., only frequent reaching, pushing, and pulling)."). Accordingly, Plaintiff's argument regarding lesions (concerning imaging the ALJ did consider) is unavailing.

### H. Plaintiff's Limited Treatment

Finally, Plaintiff argues that the ALJ erred in emphasizing that Plaintiff underwent limited treatment for MS. ([14] at 11-12.) Pertinent to that argument, the ALJ noted that "[d]uring the relevant period, treatment has generally been limited to intermittent primary care visits." (R. 28.) The ALJ further noted that "[t]he claimant does not appear to have treated with a neurologist, though she was referred to one in June 2018." (*Id.*) Additionally, the ALJ noted that "it does not appear that the claimant took any regular medication to treat her MS during the

13

relevant period." (*Id.*) The ALJ also recognized that Plaintiff "received IV steroid injections to treat flares" but noted that "there is no evidence that the claimant underwent [infusion] treatment during the relevant period." (*Id.*)

Contrary to Plaintiff's protestations, routine and conservative care in the face of allegations of debilitating symptoms is a valid factor for an ALJ to consider. *See Ellen B. v. Saul*, No. 19 C 2389, 2020 WL 1912228, at *6 (N.D. Ill. Apr. 20, 2020). In this case, the Court finds no error in the ALJ's assessment of Plaintiff's treatment history that would require remand. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("[T]he ALJ did not err in considering that Prill received conservative treatment."); *Lisa G. v. Kijakazi*, No. 21-CV-3732, 2022 WL 4272782, at *4 (N.D. Ill. Sept. 15, 2022) ("[T]he ALJ adequately explained her rationale behind limiting Plaintiff to light work with additional limitations. It was not error for the ALJ to have considered Plaintiff's conservative course of treatment when coming to this conclusion.").

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [14] is denied, and the Commissioner's cross-motion for summary judgment [19] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:    January 10, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**